**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**MEGAN WATSON** **PLAINTIFF**

**V.** **No. 3:26-CV-00090-ERE**

**SOCIAL SECURITY ADMINISTRATION,**
**Commissioner** **DEFENDANT**

**ORDER[1]**

Plaintiff Megan Watson appeals the Social Security Administration Commissioner's final decision denying her application for disability benefits. For the reasons set out below, the Commissioner's decision is AFFIRMED.

## I. Background

On July 10, 2023, Ms. Watson filed an application for benefits due to autism. *Tr. 18, 197.*

Ms. Watson's claim was denied initially and upon reconsideration. At an August 21, 2024 hearing, an Administrative Law Judge ("ALJ") heard testimony from Ms. Watson and a vocational expert ("VE"). *Tr. 36-57.* On September 12, 2024, the ALJ issued a decision finding that Ms. Watson was not disabled. *Tr. 18-29.* The Appeals Council denied Ms. Watson's request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-3.*

[1] The parties consented in writing to the jurisdiction of a United States Magistrate Judge. *Doc. 5.*

Ms. Watson, who was twenty-four years old at the time of the hearing, has a high school education and no past relevant work experience. *Tr. 40, 54.*

## II. The ALJ's Decision[2]

The ALJ found that Ms. Watson had not engaged in substantial gainful activity since the application date of July 10, 2023 and had the following severe impairments: borderline intellectual functioning and generalized anxiety disorder. *Tr. 20.* However, the ALJ concluded that Ms. Watson did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 21.*

According to the ALJ, Ms. Watson had the residual functional capacity ("RFC") to perform work at all exertional levels, with the following limitations: (1) simple instructions; (2) simple tasks within customary workplace breaks; (3) simple work-related decisions; (4) only occasional interaction with the public; and (5) no more than occasional changes in a routine work setting. *Tr. 24*.

In response to hypothetical questions incorporating the above limitations, the VE testified that a substantial number of potential jobs were available in the national

[2] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)(4).

economy that Ms. Watson could perform, including laundry worker, commercial cleaner, and kitchen helper. *Tr. 28, 54-55.* Accordingly, the ALJ determined that Ms. Watson was not disabled.

## III. Discussion

### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

**B. Ms. Watson's Arguments for Reversal**

Ms. Watson contends that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in finding that she did not meet Listing 12.05(B). *Doc. 9.*

**C. Analysis**

Ms. Watson asserts that she met Listing 12.05(B), which relates to intellectual disorders. *Doc. 10*.

A claimant may meet Listing 12.05(B) by demonstrating:

(1) a full scale IQ score of 70 or below, or a full scale IQ score of 71-75 with a verbal or performance IQ score of 70 or below; <u>and</u>

(2) significant deficits in adaptive functioning manifested by extreme limitation of one, or marked limitation of two, of the following areas:
   (a) understanding, remembering, and applying information,
   (b) interacting with others,
   (c) concentrating, persisting, or maintaining pace, or
   (d) adapting and managing oneself; <u>and</u>

(3) evidence that the intellectual disorder began before age 22.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05 (emphasis added).

At step three, the burden rests squarely on the claimant to prove she met a Listing. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). The claimant must show that her impairment matches all of the specified medical criteria of a Listing. *Johnston v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

The primary dispute is whether Ms. Watson met Part 2, which requires her to have "significant deficits in adaptive functioning." *Doc. 10*. On this issue, the ALJ concluded that Ms. Watson did not meet Part 2 because she had only moderate limitations in understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. *Tr. 21.* The ALJ compared Ms. Watson's allegations with the record evidence, none of which supported a finding of extreme or marked limitations. *Id.* For example, the ALJ noted that Ms. Watson "was able to provide information about her health, respond to questions from medical providers, and there is no mention of any issues with the claimant's short- or long-term memory in mental status examination." *Tr*. 21. The ALJ also pointed out that Ms. Watson could "handle self-care and personal hygiene and care for pets" and "does not have significant deficits in adaptive functioning manifested by a dependence upon others for personal needs as she can perform her activities of daily living autonomously." *Tr. 21, 23.* Finally, the ALJ noted that "neither consultative examiner found that [Ms. Watson] exhibited an extreme or even marked limitation persisting with basic tasks in June 2021 and October 2023." *Tr. 24.*

The ALJ concluded that Ms. Watson "does not have significant adaptive functioning limitations as shown by the mental status examinations throughout the record which demonstrate that the claimant has good eye contact, adequate

grooming and hygiene and is able to communicate with her providers appropriately." *Tr. 23.*

Notably, Ms. Watson does not argue that she had extreme limitations in any area of adaptive functioning. As for marked limitations – which would be required in two areas to meet Listing 12.05(B) – Ms. Watson's supporting evidence is scant. She points to treating therapist Leah Everett's October 2021 assessment. *Doc. 9*; *Tr. 538-40*. Although Ms. Everett found Ms. Watson had "moderate to marked mental limitations in all psychological areas," the ALJ noted that that assessment was based on only five previous visits. *Tr. 25.* The ALJ also found that Ms. Everett's conclusions were "not entirely supported by her own notes which indicate that the claimant was not prescribed any medications for her anxiety and had a good prognosis with treatment." *Id.* Ultimately, the ALJ found Ms. Everett's opinion not persuasive when compared to the record as a whole, Ms. Watson's activities of daily living, and the opinion of Dr. Samuel Hester, who performed a consultative mental evaluation on June 8, 2021. *Tr. 25-26.*

Ms. Watson also relies on school evaluations and testing from 2008 and 2012. *Doc. 9 at 40, 43.* First, both of these reports are remote in time. Second, by 2019, Ms. Watson's senior year in high school, she "exhibited the general intellectual ability within the below average range of functioning for her age." *Tr. 23, 517*. In

other words, while she had limitations, she did not have extreme or marked limitations.

Generally, Ms. Watson's argument of marked limitations represents her interpretation of the medical records and is simply an invitation to reweigh the evidence, which is not permitted. *Bonham v. Bisignano*, 177 F.4th 934, 940 (8th Cir. 2026) ("We do not reweigh the evidence."); *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) ("It is not the role of this court to reweigh the evidence presented to the ALJ.").

The record contains substantial evidence to support the ALJ's finding that Ms. Watson did not meet Listing 12.05(B).

## IV. Conclusion

The ALJ applied proper legal standards in evaluating Ms. Watson's claims, and substantial evidence supports the decision to deny benefits.

IT IS THEREFORE ORDERED that the Commissioner's decision is affirmed, and judgment will be entered accordingly.

Dated 28 October 2026.

UNITED STATES MAGISTRATE JUDGE